IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOE ANTHONY GUERRA AND LINA CARRANZA, INDIVDUALLY AND ON BEHALF OF THE ESTATE OF JOSE ALBERTO GUERRA, DECEASED. <br><br> *Plaintiffs*, <br><br> v. <br><br> SGT. FRANK BELLINO AND BEXAR COUNTY <br><br> *Defendants*. | § § § § § § § § § § § § § § §   Civil Action No.  5:14-CV-00652-XR |

## ORDER

On this date, the Court considered Defendants' motions for summary judgment (Docket Nos. 77 and 143); Defendants' motion to strike exhibits (Docket No. 125); Defendants' motion to exclude the expert testimony of Jeffrey Noble (Docket No. 79); Plaintiffs' motion to exclude the testimony of George Williams (Docket No. 139); and the various responses and replies.

## BACKGROUND

What is undisputed is that at approximately 1:30 a.m. on October 14, 2012, 19-year-old Jose Anthony Guerra was shot and killed by former Bexar County Sheriff's Department Sergeant Frank Bellino. It is undisputed that no weapon was found on or near Guerra after the shooting. Also undisputed is that prior to the shooting, reports were made to law enforcement by at least two concerned citizens that a male or boy was very intoxicated, causing a traffic disruption along Culebra Road, and possibly placing himself or others in immediate danger. Sgt. Bellino responded to the reports.

1

Plaintiffs contend Sgt. Bellino "exited his vehicle, . . . drew his gun, pointed it at Jose Guerra, and shouted 'I'll shoot your fucking ass!'" (Docket No. 108). Sgt. Bellino alleges that when he approached the scene he noticed that cars were swerving to avoid something. When he saw Guerra he pulled his vehicle to the right edge of the lane. Guerra was about 25 feet in front of the police vehicle. Bellino claims that Guerra was sweating, breathing heavily, flexing his muscles as if readying himself for a physical altercation, and that he began to walk quickly toward the driver's side of the police vehicle. Bellino then alleges he exited his vehicle and told Guerra to stop. Bellino alleges that Guerra appeared either intoxicated or as having some type of "mental episode." According to Bellino, Guerra failed to stop and continued toward him, Bellino then drew his weapon, activated his toner to request assistance, and again ordered Guerra to stop using an expletive. After Guerra saw that Bellino drew his weapon, he stopped, and Bellino ordered him to put his hands on the hood of the patrol car. Bellino was standing at the rear of the vehicle. Bellino alleges that Guerra had his fists clenched on the hood of the patrol vehicle, so he could not determine whether Guerra had anything in his hands. Bellino continued pointing his weapon at Guerra because of Guerra's past behavior and waited for backup. Bellino asked Guerra for his name, but Guerra began performing push-ups off the hood.[1] It is uncontested that Guerra then moved in toward Bellino.[2] Bellino alleges that he again ordered Guerra to stop and took a few steps back, but that Guerra then lowered his head in an apparent attempt to tackle Bellino. At that point Bellino fired three shots.

---

[1] The parties dispute whether Guerra ever responded to the request for his name. Bellino alleges that Guerra stated in a demonic voice to call him Union. Plaintiffs believe that Guerra stated to call his unit, an apparent reference to call his military reserve unit.
[2] A witness captured the incident on his cell phone. Although the video is taken at some distance and is blurry, it is clearly evident that Guerra moved in Bellino's direction. How quickly Guerra moved and whether Guerra charged Bellino or attempted to flee is in dispute.

Bellino argues that he was required to fire his weapon because "I was afraid that if he grabbed me we would end up fighting in the street and that I would be struck by a passing car, or that he may have unknown weapons in his clench[ed] fist that would hurt me . . . . [T]he danger of a serious traffic-related injury was particularly great." (Docket No. 78).

## PLAINTIFFS' CLAIMS

Plaintiffs claim Bellino violated Guerra's Fourth Amendment right to be free from excessive force when Bellino drew his weapon and pointed it at Guerra. (Docket No. 135). Plaintiffs also claim Bellino violated Guerra's Fourth Amendment right to be free from unreasonable seizure when Bellino shot and killed Guerra.

With regard to Bexar County, Plaintiffs allege numerous claims that are addressed below.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a

scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

## ANALYSIS

### A. Claims against Bellino

Bellino argues that he is entitled to qualified immunity in this case. In addition, Bellino argues that with regard to the first claim (drawing and pointing a weapon at Guerra), Guerra was not injured by these acts, and such actions did not violate a clearly established constitutional right.

"[Q]ualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Mason v. Lafayette City-Par. Consol. Gov't*, No. 14-30021, 2015 WL 6988739, at *4 (5th Cir. Nov. 10, 2015).

In *Mason*, the Fifth Circuit restated Section 1983 jurisprudence in an deadly force case as follows:

> In *Tennessee v. Garner*, the Supreme Court explained that to reasonably use deadly force, an officer must, at the very least, have "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." The officer's reasonableness in using force—deadly or non-deadly—is analyzed under an objective standard "in light of the facts and circumstances confronting [the officer], without regard to [his or her] underlying intent or motivation." In *Graham v. Connor*, the Supreme Court directed courts determining an officer's objective reasonableness to pay "careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." We consider reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Additionally, we must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a

> particular situation." Our inquiry is limited to whether the officer "was in danger at the moment of the threat" that resulted in the use of force.
> *Mason* at *5 (internal citations omitted).

Whether *Mason* is correct law in light of the Supreme Court's recent decision in *Mullenix v. Luna*, 136 S. Ct. 305, 308-09 (2015) remains to be seen.

In this case, the court must accept as true the evidence of the nonmoving party and draw all justifiable inferences in that party's favor. *See Mason* at *5. Plaintiffs have raised competent facts that demonstrate that when Bellino arrived at the scene, he was already aware that Guerra was either drunk or mentally unstable. Guerra was already advancing toward the patrol vehicle while Bellino was inside his vehicle. Bellino could have merely stayed inside his vehicle and awaited assistance. Bellino exited his vehicle and when Guerra approached again, Bellino drew his firearm. Bellino could have reached for his baton.

Plaintiffs' argument that as a matter of law pointing a weapon at Guerra violated a clearly established right is incorrect. Plaintiffs' reliance upon *Baird v. Renbarger*, 576 F. 3d 340 (7th Cir. 2009) is illustrative. In *Baird*, the court noted that circuits have held that pointing guns at persons who are compliant and present no danger is a constitutional violation. *Id*. at 346. The *Baird* court, stated, however, that courts do not find constitutional violations for gun pointing when there is a reasonable threat of danger or violence to police. *Id*.

A material fact issue exists as to whether the drawing of his firearm under these facts constituted excessive force. As indicated above, Bellino was aware that Guerra was either drunk or mentally unstable. Although Bellino was authorized to take reasonably necessary steps to ensure his own personal safety, a fact issue exists as to whether a reasonable threat of danger or violence existed.

The above notwithstanding, Bellino argues that in this case there is no allegation that Guerra suffered any injury merely because the weapon was pointed at him. Accordingly, Bellino argues that this claim must be dismissed and the sole inquiry in this case is whether at the moment of the shooting the use of deadly force was reasonable. The Court agrees that Plaintiffs have failed to plead any injury that arose from the first claim. The Court also agrees that Plaintiffs' claim regarding the drawing and pointing of the weapon is foreclosed by Fifth Circuit precedent. According to the Fifth Circuit, any argument that Bellino should have initially approached Guerra in a different manner is irrelevant. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir.1992) (focus is on the moment of shooting); *Kelly v. City of Houston, Tex.*, 268 F.3d 1064 (5th Cir. 2001) (same).

Summary judgment is granted on Plaintiffs' first claim (drawing and pointing a weapon at Guerra).

Genuine issues of material fact, however, exist as to whether Bellino was objectively reasonable when he shot Guerra. Witnesses to the scene testified that Guerra was not a threat[3]; he had his hands on the hood, a leg spread, and was visibly intoxicated. Other witnesses stated that the officer was only defending himself. Plaintiffs' summary judgment evidence establishes that a very short period of time elapsed between Bellino arriving at the scene, drawing his weapon, yelling "I'll fucking shoot your ass," and firing his weapon. A fact issue exists as to whether Guerra was rushing the officer or whether he attempted to run past him. At least one witness testified that prior to moving towards the officer, it appeared to her that Guerra was being cooperative. Bellino counselled with an attorney prior to completing his written statement,

---

[3] Plaintiffs emphasize that while Guerra was 5'10" and 198 pounds, Sergeant Bellino was a 30-year law enforcement veteran standing 6'2" and weighing 220 pounds. Bellino stresses that Guerra was a healthy 19-year old male. Discovery revealed that Guerra was a U.S. Army Reservist and capable of running five miles.

and credibility determinations must be made as to whether some facts were omitted from his statement and whether other items were added to justify the shooting.

There are questions relating to the material facts of the incident that could lead a reasonable juror to conclude either that Sgt. Bellino's fears were reasonable[4], or that those fears were not reasonable. Bellino's motion for summary judgment based on the qualified immunity defense is denied.

### B. Claims against Bexar County[5]

In their Third Amended Complaint, Plaintiffs allege that Bexar County had a custom or policy that allowed officers to "make stops, searches, investigative detentions and arrests without possessing, or having training or instruction to use, less than lethal control devices and tactics."

Plaintiffs further allege that Bexar County provided inadequate training and supervision. They argue: (a) training and supervision were inadequate relating to stops, searches and investigative detentions and arrests, (b) training and supervision were inadequate relating to the use of deadly force, and (c) training and supervision were inadequate relating to the use of less than lethal control devices and tactics.

A municipality may be held liable under 42 U.S.C. § 1983 as a "person" who deprives a citizen of a constitutional right. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (*citing Monell v. N.Y. City Dept. of Social Svc.*, 436 U.S. 658 (1978)). However, holding a

---

[4] The Court has reviewed the CDs included in the exhibits to the motions for summary judgment. They contain video of Guerra next to the patrol car and then running in the direction of Bellino, Bellino taking a few steps back and discharging his weapon. From the perspective of the person recording this videotape, it appears to the Court that Guerra is lunging at Guerra. However, Plaintiffs and Defendants have included affidavits from various witnesses that state that Guerra may not have been attacking Bellino. The Court concedes this is a close case and a difficult call, but in this summary judgment context, the Court must draw reasonable inferences and construe evidence in favor of the nonmoving party.

[5] Defendants' motion to strike exhibits (Docket No. 125) related to the killing of dangerous animals as not relevant and objection to newspaper articles on the basis of hearsay are granted. The remainder of the items referenced in this motion were not considered given the court's ruling.

municipality liable under Section 1983 for the tort of an employee based on the theory of respondeat superior is not permissible. *Id*.

The municipality's policy must be the "moving force" behind the deprivation of the individual's constitutional right. *Bd. of Cnty. Comm'rs*, 520 U.S. at 404. "Moving force" includes establishing culpability and a direct causal link. *Id*. To establish the direct causal link, the Fifth Circuit has required that the officer have actual knowledge of the policy. *James v. Harris Cnty.*, 577 F.3d 612, 618 (5th Cir. 2009). The "policy" may be a written policy, or it may be in the form of widespread practice. *James*, 577 F.3d at 617. If the policy is not facially unconstitutional, the Plaintiff must demonstrate that "it was adopted with 'deliberate indifference' as to its known or obvious consequences." *James*, 577 F.3d at 617 (*quoting Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293 (5th Cir. 2004)).

### 1. Inadequate training and supervision claims

Plaintiffs appear to abandon these claims and they were not briefed in any response. *See* Docket no. 112. Bexar County's motion provides ample summary judgment evidence that all deputies are properly trained to be a Texas peace officer and thereafter receive additional training. Bexar County's motion for summary judgment on these claims is granted.

### 2. Inadequate training and supervision claims relating to the use of deadly force

Plaintiffs appear to concede that Bellino received training on the proper use of deadly force, but appear to argue that he had not received any annual or refresher training on the use of deadly force between 2008 through 2012.

Assuming that fact to be true and accurate, it is merely a conclusory statement and not competent summary judgment evidence to suggest that Bellino fired his weapon because he had not reviewed the Sheriff's use of force policy for several years prior to the incident. Further, Plaintiffs fail to produce any competent summary judgment evidence that any policy of inadequate training and supervision was the "moving force" behind the deprivation of Guerra's constitutional rights. Finally, Plaintiffs fail to provide any competent summary judgment evidence that Bexar County's training policies were facially unlawful or otherwise promulgated, maintained, or administered with deliberate indifference. Bexar County's motion for summary judgment on this claim is granted.

### 3. Inadequate training and supervision claim relating to the use of less than lethal control devices and tactics

Plaintiffs also appear to abandon this claim and it was not briefed in any response. *See* Docket no. 112. Bexar County's motion provides ample summary judgment evidence that all deputies are properly trained to be a Texas peace officer and thereafter receive additional training. Bexar County's motion for summary judgment on this claim is granted.

### 4. Policy or custom of creating or allowing a "culture of impunity"

Plaintiffs raise this claim in their response. Within this claim, there are several sub claims. First, Plaintiffs argue that the County has a policy wherein the Bexar County Sheriff's Department, Criminal Investigations Division (CID) did not investigate many cases of officer-involved shootings, and in cases where investigations were conducted the CID failed to investigate whether the officer violated any criminal laws. Plaintiffs allege that in some instances, CID's investigation was carried out as to merely corroborate the officer's version of

events. In this case Plaintiffs allege that CID's investigation was "principally aimed at justifying Sergeant Bellino's use of force."[6]

Second, Plaintiffs allege that the County had a policy or custom of not conducting a separate administrative investigation in any officer-involved shooting. Plaintiffs allege that Bexar County Sheriff Office policy required that the Professional Standards and Integrity (PSI) Division monitor the CID investigation to ensure that no facts were omitted. Further, Plaintiffs allege that an administrative investigation was required to determine whether any administrative regulations were violated by Bellino and whether any additional training was required for remedial purposes.

Third, Plaintiffs allege that the County had a custom or policy of failing to discipline deputies for using excessive force. This sub-claim is easily dismissed. Plaintiffs argue that Bexar County only disciplined two officers between 2008 through 2015 for using excessive force. Plaintiffs, however, fail to present any competent summary judgment evidence that in an officer-involved, on-duty shooting an officer violated the use of force policy and was thereafter not disciplined.

To support their "culture of impunity" argument that the above policies or customs existed and officers knew that excessive force was tolerated, Plaintiffs argue that Bellino responded to another officer-involved shooting immediately before the Guerra call. As the supervisor responding to that call, Sgt. Bellino was required to ensure the officer who fired his weapon filed a report with PSI, and Plaintiffs alleges that Bellino failed to do so. Additionally,

---

[6] Plaintiffs' expert opines that the CID should not have referred to Bellino as the complainant and the decedent as the Defendant; Bellino's cell phone should have been seized and examined just like Guerra's; and that CID should have inquired about Bellino's pre-incident activities, just like the investigation into Guerra's activities.

Plaintiffs allege that Bellino violated Bexar County Sheriff Office policy by meeting with a private attorney at the Guerra scene before filing his report.

In this case, Plaintiffs rely upon the same argument unsuccessfully used in *James v. Harris County*, 577 F. 3d 612 (5th Cir. 2009). In *James*, the court assumed that the police officer "used excessive force, and that it was the Sheriff's official policy to cede a thorough investigation of officer-involved shootings to the District Attorney, and correspondingly to abstain from further officer discipline in such cases." *Id*. at 618. The court also assumed "that the alleged policy was adopted with deliberate indifference to its known or obvious consequences, that is, that it would spawn reckless police arrests in violation of the Constitution." *Id*. Accordingly, the only question before the court was whether a "reasonable jury could find the alleged policy was the moving force behind Wilkinson's actions." *Id*. The Fifth Circuit held it could not. The Court stated to "show that the alleged policy was the moving force behind [the police officer's] use of excessive force, the family was required, at a minimum, to adduce evidence that [the police officer] understood that it was the Sheriff's official policy only to cursorily investigate officer-involved shootings and consequently not to discipline for this conduct." *Id*.

In *James*, the plaintiffs argued that on the basis of their expert's testimony, "a reasonable jury could find that a policy of avoiding thorough investigation of officer-involved shootings was so widely known among the department's deputies that [the police officer's] personal knowledge of the policy could be assumed." *Id*. at 619. Disagreeing, the Fifth Circuit concluded that such testimony failed to supply "the direct causal link to Wilkinson's use of excessive force, because it simply does not connect Dr. Klinger's general theory to Wilkinson's knowledge that the Sheriff

11

had a lax investigation and discipline policy." Plaintiffs' claim in this case suffers from the same deficiency. Plaintiffs fail to present any competent summary judgment evidence that any policy or custom establishing a "culture of impunity" was the moving force behind Bellino's actions.

Indeed, Bexar County notes that officer-involved shootings are referred to the District Attorney's office, investigations could be conducted by the Texas Rangers or the Federal Bureau of Investigation, there is the potential for criminal investigation under either state or federal law, and officers could be subjected to civil lawsuits. Accordingly, Bexar County argues Plaintiffs have failed to establish any evidence supporting that any "culture of impunity" exists or was the moving force behind Bellino's action in this shooting.[7] Plaintiffs have failed to present competent summary judgment evidence, and rely upon the same unsuccessful argument and expert testimony rejected in *James*. Summary judgment is granted to Bexar County on this claim.

### 5. Claim that policy that patrol sergeants take calls for service and not issuing a TASER to those patrol sergeants contributed to the excessive force used against Guerra

In their response, Plaintiffs argue that Bexar County had a policy that patrol sergeants were required to take calls for service. Bexar County issued TASERs to patrol deputies, but had not yet issued TASERs to sergeants such as Bellino. Plaintiffs argue that the two policies (requiring patrol sergeants to go on calls and not equip them with TASERs) caused Bellino not to have a less lethal option available.

The municipal liability deliberate indifference standard is objective and is met when "a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or

---

[7] Otherwise, even if Plaintiffs' argument that CID conducted a deficient investigation and that a separate administrative investigation was also required were analyzed separately from the overall "culture of impunity" claim, Plaintiffs fail to establish that those policies or customs were the "moving force" behind Bellino's action in this shooting.

constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." *Canton*, 489 U.S. at 396. Courts have been reluctant to impose liability upon municipalities based on failure to equip claims. *See Carswell v. Borough of Homestead*, 381 F.3d 235, 245 (3rd Cir. 2011) ("we have never recognized municipal liability for a constitutional violation because of failure to equip police officers with non-lethal weapons"); *Plakas v. Drinski*, 19 F. 3d 1143, 1150 (7th Cir. 1994).

In this case Bexar County provided Bellino with a non-lethal weapon, a baton. The County was in the process of issuing its deputies TASERs and began issuance of the stun guns to first-line deputies. Eventually, TASERS were issued to sergeants. Prior to this shooting, there was no indication to the County that Bellino was inclined to use excessive force. Accordingly, Bexar County policymakers were not placed on actual or constructive notice that the decision to allow Bellino to respond to the 911 calls without a TASER was substantially certain to result in the violation of Guerra's constitutional rights. The County is entitled to summary judgment on this claim.

### C. Motion to Exclude Expert Testimony of Jeffrey Noble

To the extent the motion seeks the exclusion of any expert testimony directed towards the claims against Bexar County, the motion is dismissed as moot given the dismissal of those claims.

Otherwise, to the extent Bellino seeks the exclusion of expert testimony that opines on whether the use of deadly force in this case was inconsistent with generally accepted police practices and whether an intermediate level of force was appropriate, Bellino's motion to strike is denied. Courts generally allow experts to state an opinion on whether the conduct at issue fell

below accepted standards in the field of law enforcement. *See Zuchel v. City & Cty. of Denver, Colo.*, 997 F.2d 730, 742 (10th Cir. 1993) (the expert, however, may not opine that the conduct was unconstitutional, but merely that the conduct generally did not comply with accepted police custom and practice).

### D. Plaintiffs' motion to exclude the testimony of George Williams

Plaintiffs argue that Mr. Williams, a high school graduate who has never been employed as a law enforcement officer, is unqualified to render any expert opinions. Plaintiffs argue that he renders opinions about proper law enforcement actions without any qualifications, and likewise offers "human factors" opinions without any qualifications to do so. Mr. Williams also rendered opinions about the policies and practices of the Bexar County Sheriff's Department.

District courts must employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. FED. R. EVID. 702.

The County argues that the fact that Mr. Williams does not possess a degree or certification is not an automatic disqualification. That is correct, but Mr. Williams must demonstrate that he has developed reliable skills, experience, and education that establish he is qualified to render his opinions. The County argues that Mr. Williams has previously been recognized as an expert in other federal courts. Yet a careful review of Mr. Williams' CV indicates that he has done file review and given deposition testimony in other cases. His report states he has "been court qualified as an expert witness in 19 cases in federal courts…." That

may be an accurate statement, but the Court's review of the federal cases cited in the CV provides no support for that statement. It appears that Mr. Williams is highly qualified to serve as a firearms and physical survival skills instructor. Mr. Williams' CV, however, is difficult to parse out where he has written materials and taught as a firearms instructor and physical survival skills, and where he has written and taught on the issues of use of deadly force and "human factors." Secondly, it has not been established that Mr. Williams' reasoning or methodology underlying his testimony on the use of deadly force and human factors is scientifically reliable. The County's mere reliance that Mr. Williams has authored various publications is insufficient; the expert's reasoning or methodology underlying his testimony must be scientifically reliable.

Plaintiffs' motion to exclude the testimony of George Williams is granted.

## Conclusion

For the reasons stated above, Defendant Bexar County's motion for summary judgment (Docket No. 77) is granted. Defendants' motion to strike exhibits (Docket No. 125) is granted in part and otherwise dismissed as moot. Defendant Bellino's motion for summary judgment (Docket No. 143) is granted in part and denied in part. Defendants' motion to exclude the expert testimony of Jeffrey Noble (Docket No. 79) is denied in part and dismissed as moot in part. Plaintiffs' motion to exclude the testimony of George Williams (Docket No. 139) is granted. Plaintiffs' motion for a hearing (Docket No. 146) is denied.

SIGNED this 21st day of December, 2015.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE